The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. Mr. McBeth, we'd be happy to hear from you in the Fowler case. Good morning, Your Honors. My name is Cullen McBeth and I represent the appellant, John Michael Fowler. Your Honors, the district court in this case determined that a sentence that best complied with the purposes of sentencing in 3553A was one that would keep Mr. Fowler in prison until he turned 60, i.e., a 32-year sentence. Nevertheless, the court then sentenced Mr. Fowler to 40 years in prison, eight years longer than what the court itself believed was sufficient but not greater than necessary to serve the purposes of sentencing. By doing so, the court erred in two ways. First, by hypothesizing that Mr. Fowler would receive good time, the court assumed for itself a power that Congress has delegated to the BOP, not the district court, and thereby rejected policies that Congress has articulated. Well, the district court didn't overtake the BOP function, and it's not as if the district court sat there and stripped the BOP of its authority to award good time credits. The district court didn't award any good time credits. It left that to the BOP. That's correct. So the court, Your Honor, did not purport to say that Mr. Fowler will receive this good time credit, but it assumed that he would and used that assumption to determine what the sentence should be. And the Supreme Court in the Barber case says that good time is subject to determination by the BOP, not the district court, and that's because whether someone earns good time credit or not depends on behavior that happens after sentencing. So a district court, as the Supreme Court said in Pepper, has to sentence a defendant based on how he stands before the court on the day of sentencing. And based on the information you have at that time, you determine what the proper sentence is. But whether someone earns good time credits or not obviously depends on what happens after sentencing. And so it's impossible for the court to know whether someone will earn good time credit or not. And the Supreme Court in Barber talked about the good time statute and it compared it to the old good time statute. And it said that, it pointed out that under the old good time statute, a defendant was in fact, quote, entitled to good time credit. So the old statute said, quote, a defendant is entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run. So it was an entitlement. And then in 1987, Congress nixed that scheme and said that now time has to be earned through good behavior. And the Supreme Court says in Barber, we cannot say that this language, this new language found its way into the statute by accident. We agree that the textual differences between the two statutes reveal a purpose to move from a system of prospective entitlement to a system of retrospective award. And in this case, the court was treating good time essentially as an entitlement, as something that Mr. Fowler would earn. I don't think the court knew whether he'd be awarded good time credits or not, but wasn't the ultimate judgment that the district court made, which was a 40-year sentence, wasn't that consistent with the factors set forth in 3553A, which the chief factors being punishment and deterrence. And the district court said the objectives of 3553A would allow the, what he did here was utterly vile and there has to be an adequate punishment for that. But at the same time, the district court said, I'm not going to eliminate every flicker of hope out of a man's life, so he cut him a break. And ultimately, he made a judgment call, which is what we really want good district judges to do during sentencing, to use their discretion to make a good judgment call. And he actually cut him a considerable break. So he did, Your Honor. The guidelines certainly... I thought the government would be the one appealing. Certainly under the guidelines, a life sentence was recommended, but... It's not just that. Under the guidelines, a life sentence is recommended. And in addition, the government was looking for 50 years rather than 40 years. And even more so, there were not just one sexual, instance of sexual assault of a 7-year-old child, but multiple instances which had they been sentenced. And more than one victim. Correct, Your Honor. And so in the abstract, a 40-year sentence, in theory, could be totally reasonable. But when the court gets to that 40-year number, it has to do it based on permissible factors. And in this case, it very clearly said, this is at page 75 of the joint appendix, that what's proportionate, what protects the public, what provides punishment and deterrence is to keep him in his... Punishment is a 3553A factor, and the district court said, this kind of behavior warrants punishment. But deterrence is a 3553A factor, and the district court said, there has to be a strict sentence here to avoid what happened, which really, we would all agree, is truly vile. It was, Your Honor. And so what I'm saying is, you know, we can set up these tripwires for district courts, which says, well, you can't mention this and you can't mention that. And I'm wondering if we lose the forest for the trees, the forest being that we want district courts to consult the 3553A factors and to arrive at what they think the crime warrants. And in this case, it was a downward departure almost. So we absolutely do want that, and the court began its analysis by doing that. And that's where it said, you know, what promotes the deterrence and protects the public, et cetera, all those factors is keeping him in prison until his 60th birthday. So, so far, so good. But then the court did something that it can't do. So it did the 3553A analysis and said 60th birthday, but then it went above that sentence by eight years, based solely on good time credit. The court said, I've been crunching the numbers and I want, in addition to that 32 years, I want eight more years so that when you earn good time credit, you actually get out at your 60th birthday. And that's what's improper. So the court did do that balance. Isn't that what the court did in Gullet? Isn't that the same thing where that statute said you can't, the district court couldn't sentence the defendant to a life sentence? So the court said, well, a life sentence would be, what, 33 and a half years. So I'm going to sentence you to 38 years, more than a life sentence, but taking into account good time credit, it's just under a life sentence. And we said that doesn't violate the statute. You're allowed to consider good time credit when thinking about the age at which someone will be released, which is what happened here. Right. So a couple of points about Gullet, Your Honor. So Gullet presented a different question from the question in this case. The question in this case is, what sentence is sufficient, but not greater than necessary to serve the purposes of sentencing? And the Sentencing Reform Act tells courts very clearly how you answer that question. You look at the 3553A factors and only those factors, and you balance them and you weigh them and you come to a number. The question in Gullet was, what does the word life imprisonment mean? And the statute in that case, Section 34, provides no guidance about how to answer that question. It doesn't say what you can look at. It doesn't say what you can't look at. And specifically, it doesn't say that you're limited to looking at what's in 3553A. So good time credits, which are not a 3553A factor, are not available in this case, but they were not statutorily excluded in that case. What in 3553A prohibits the court from looking at good time credit? The fact that it's something that hasn't even happened yet. So good time credit, again, is not an entitlement. You're not assumed to earn good time credits. It's based on stuff that happens after sentencing, and the court simply cannot know whether a defendant is going to- But in Gullet, we said the fact that you can't know doesn't bother the court. The court said there it would have violated the statute. The court sentenced him to longer than his life, but the court said that's not a problem because we want to actually encourage someone to try to earn those credits. Right, but again, that wasn't a 3553A case. The defendant in that case did not raise the question, and the court did not address the question of whether that sentence satisfied or violated section 3553A. You would have been perfectly content if the court had imposed a longer sentence and just hadn't mentioned good time credits. That would have been fine with you if the court had imposed a 50-year sentence or a life sentence and just hadn't mentioned good time credits. You would have no assignment of error. Well, we wouldn't have this assignment of error, Your Honor. We might be making an overall substantive unreasonableness argument, but- Well, I know. I guess you've also raised the point that you think the sentence is substantively unreasonable. Correct, but just- you're right. In that case, if the court had not relied on good time credits, we would not be making this argument. But to go back to your question, Judge Rushing, about Gullet, Gullet was in 1996, and now in 2019, the landscape has changed. So the Supreme Court said in the Pepper case in 2011 that good time credit cannot affect the length of a court-imposed sentence. A variance can do that- The court was describing. It was a descriptive statement about here's how they work. The court never said the district court can't consider these factors. Well, if the court considers that factor, then it necessarily, if the court lets it, affects the length of the sentence. I mean, I don't think there's any way to say I'm bearing upward to account for good time credit and not have that affect the length of the sentence. I mean, that's absolutely what happened in this case. The court said your 3553A sentence is 60, age 60, which is 32 years. I'm going to add eight years. The good time credit is absolutely affecting the length of the sentence, and it's, quote, changing the very terms of imprisonment, which the court in Pepper said can't be done. I just want to draw an analogy to Section 3585, which we mentioned briefly in our brief. That's the statute that says a defendant can get credit for time served in detention before the sentence is imposed. And the Supreme Court said in the Wilson case that the computation of that credit belongs to the BOP, not the court, because the sentencing court cannot know in every case how much time there will be, and therefore the BOP has to make that determination of what the credit is. But the BOP is allowed to make that determination. He didn't take away the BOP's ability to make the determination at all. Correct. Correct, Your Honor. But my point is that because that's something that belongs to the BOP, it's not an appropriate 3553A factor, which is what this court said in the figure read case, which we cite. So in that case, the defendant asked the district court to reduce his sentence based on time he had spent in pretrial detention. Well, I come back to the point. We're making sentencing into a very Byzantine kind of exercise, where you say, oh, you can't say this, you can't say that. And what we do when we set up all of these little tripwires and all of these little rules and derivative rules is we take away the quality of judgment from a district court. Now, there are limits to what a district court must do, must explain the sentence, and he must ground decision in the 3553A factors. But there has to be a role in all of this for a district judge to do what district judges do best, which is to weigh the gravity of the offense here against fairness to the individual defendant. And that was at the heart of it. And, Your Honor, I don't disagree with that. And my point is simply that the court did that, but then it went beyond that. So it did the 3553A analysis, which I agree the court, we want district courts to do. But then it also said, in addition to that, I'm going to add eight years based entirely on good time credits. And it's that latter move that's not permissible. And I see I'm almost out of time, so if I may, I'd like to reserve the rest of my time for rebuttal. Thank you, sir. Ms. Levin. Good morning. Thank you, Your Honor. May it please this court. Dan Levin on behalf of the United States. Judge Bennett rendered a sentence of 40 years incarceration in this case, sentencing Fowler to that term of incarceration because of the heinous acts that he committed, which included child rape and the sexual abuse of two young girls aged 7 or 8. Judge Bennett did not err when he considered good time credit, and he certainly didn't commit plain error. Judge Bennett considered good time credit, rather, in the context of all of the Section 3553A factors, and in particular the factor of the need to protect the public from future crimes of the defendant. What I think is also important here is to put that consideration in the context of the defendant's argument in this case. The defense argument at sentencing, which was quite effective, was that a life-equivalent sentence was inappropriate. That phrase, as Judge Rushing mentioned, comes up in this court's gullet opinion. And the sentencing court, not missing the forest through the trees, engaged directly with defense counsel, credited that argument, said on the record, I agree that a life-equivalent sentence is inappropriate. Did the defense counsel at the time raise an objection with respect to the District Judge mentioning good times credit? Judge Wilkinson, the defense counsel did not, and the government submits plain error review. So on top of everything, we're here on plain error review. And the appellant conceded that at page 14 of their reply brief, Your Honor. And under the fourth factor of a line of defense, your opposing counsel is asking us to say it's some sort of miscarriage of justice to sentence this individual to an effective sentence of 40 years? Judge, the facts of this case are truly heinous and horrific. I could recount them all, and I set forth them in the brief. I would just direct this court's attention to page 43 of the joint appendix, when the victim's mother testified at sentencing. I was there for that testimony, and the victim's mother said that her daughter wakes up then age 12 in the middle of the night and wishes she was dead because of what happened to her. A family was torn apart, and that wasn't the only victim. Judge Bennett made a record of this. The scar that was left by the defendant on the victim was a permanent one, and Judge Bennett said that the defendant had effectively sentenced Jane Doe to a life sentence. I want to turn to another piece of the record, if I may, Your Honor. With all due respect to my counsel at bar, the judge here did not vary upwards based on good time credit, and the judge did not assume that good time credit would be in place. I direct the court's attention to page 75 of the joint appendix. Judge Bennett literally says, who knows whether Fowler will get good time credit. That's up to the Bureau of Prisons. What the judge was trying to do here was fashion a sentence varying downwards from the lifetime range that was appropriate in this case to consider all of the 3553A factors and what the district court characterized as the defendant's significant suffering extraordinarily during his life. And if you look at the gullet opinion, as Judge Rushing mentioned, it shows exactly why Judge Bennett was doing what he was doing. Judge Bennett credited the argument that a life equivalent sentence was inappropriate here despite the heinous conduct and was varying downwards and was trying to find something in between. The defense submitted that a 15-year all-concurrent mandatory minimum was appropriate. Judge Bennett found that inappropriate because at pages 74 and 75 of the joint appendix, the thought that Mr. Fowler could be released in his 40s or as early as 40 when accounting for good time credit, it would not adequately protect the victims in this case from future crimes from the defendant. At the same time, Judge Bennett didn't think that Fowler needed to be incarcerated for age 70 or beyond, which is what the government was arguing for in its 50-year sentence because at that point the risk of recidivism had decreased, which is a point that the opposing side makes in their opening brief. Recidivism decreases with age. I think that that supports the judge's reasoning here. And I don't know how a sentencing court can fully consider the recidivism decreasing with age unless the court considers the potential age range of a defendant's release from prison. I'd also like to just briefly draw this court's attention to the Roberts case, a published opinion from the Sixth Circuit that was decided just after briefing was submitted in this case. The Roberts case decided this exact issue and said that there was no error under an abusive discretion review so long as the sentencing court did not consider good time credit as a stand-alone factor. This case, Fowler's sentencing— Did not consider good time credit as what? A stand-alone factor, Your Honor. And I would submit that it's clear from the record that the court did not consider, in Fowler's case, good time credit as a stand-alone factor. This was the subject of the government's 28-J letter, which was submitted some time ago just after oral argument was scheduled. And I would submit to this court that the Fowler sentencing is a much easier case than the Roberts case for at least three reasons. First, we're under the plain error standard of review, as the other side concedes. Roberts applied the abusive discretion review. Second, we're in the context of the defense making an effective argument about a life-equivalent sentence, which then puts us into the gullet opinion that we talked about. And third, the Roberts case involved a serious crime, of course, but involved the theft of military equipment. The need to protect the public from future crimes of the defendant from a theft of military equipment case is nothing as compared to the need to protect our public's children from future acts of child rape and child exploitation. And so I think this case falls squarely within what the Sixth Circuit ruled in the Roberts opinion. I also just want to briefly address the Pepper opinion, which the appellant cites for the proposition that somehow consideration of good time credit is inappropriate. Pepper does not stand for that proposition. It's very clear what the Supreme Court is protecting in the very first sentence and first paragraph of that opinion. And that's the province of the sentencing court to consider the fullest possible information concerning the defendant's history and characteristics. Pepper involved a case where, and this actually involved four times going up and down to the Eighth Circuit, involved a case involving methamphetamine trafficking, where the sentencing court departed downward further than what the government recommended under a 5K motion and found that a 24-month sentence was appropriate, despite guidelines that were much higher than that. The U.S. Attorney's Office appealed. It went up to the Eighth Circuit and went back down. But at that time, Pepper had actually been released from prison. And Pepper had done quite well since he was released from prison. He had a job. He was contributing to the community. And so the court, in resentencing, said it would serve no purpose to send you back to prison because I now have this information of how you've done well since the sentence was rendered. I'm interested in the distinction that you draw with, I mean, the point that you make with respect to the Roberts case. I think it's a question not whether the, as I understand it, whether the district court mentions good time credits conditionally or whatever. But it's a question of whether the district court took good time credits as a separate, stand-alone 3553A factors. Yes. And so the Roberts analysis on this issue is about a paragraph. It said there was no abuse of discretion and said that's consistent so long as it's not a stand-alone factor. I think that's clearly the case here because the 3553A analysis that Judge Bennett undertook was quite robust. And that's only at the portion where, you know, pages 71 to 77 of the joint appendix, when Judge Bennett's actually rendering sentence. Judge Bennett also had a very significant colloquy with defense counsel. He asked about all kinds of factors in Fowler's background, including his participation in the Children in Need Assistance Program for rehabilitation, which is a Baltimore-based program. His autism diagnosis, all sorts of things. And when it rendered the sentence, it was doing so in the context of the whole 3553A factors, but specifically at page 74 and 75, it was using good time credit as a way of crediting the defense argument about how a life equivalent sentence shouldn't be rendered and also as a way of figuring out how to protect the community adequately from future crimes of the defendant. The judge said releasing him at age 40 or sometime in his 40s would not adequately protect the community. At the same time, the judge felt that 70 or older was more than what was needed. So the judge sentenced Fowler to a range that would allow him to be released somewhere in the vicinity of his 60th birthday, closer to that than his 70th birthday, when you factor in good time credit. That's what the judge said. And so I think it's clear from the record this was not a stand-alone factor. I think also that good time credit... But can't it be that mentioning something in passing is enough to overturn what otherwise is a carefully considered and carefully constructed sentence? I agree completely, Your Honor. And I also take Your Honor's point from earlier that what the sentencing court was doing here is exactly what a judge should do at sentencing. It was engaging directly with each and every defense argument, factoring that all in, and coming up with a sentence that wasn't greater than necessary to fill all of the 3553A factors. And part of that was a consideration of good time credit. And I would submit to Your Honor that the plain text of Section 3553A, whose factors are very broad, the plain text supports the consideration of good time credit, not just in the... We've talked a lot about the context of the need to protect the public from future crimes of the defendant, but also the history and characteristics of the defendant, the need for the sentence to promote the respect for the rule of law and reflect the seriousness of the conduct, the types of sentences available. If you go down the list, it's incorporated in many of those very broad factors. And I submit that the way to divine Congress's intent is from the clear statutory text of 3553A, which is broad, as the Supreme Court has said, in Pepper and in Barber. I also want to just address briefly the Barber case. I agree that the Barber case talks about good time credit being something that's for the Bureau of Prisons. District Court made no mistake about that. The record is clear. It's up to the Bureau of Prisons to factor in good time credit. But the Barber opinion dealt with an issue where the Bureau of Prisons was arguably calculating good time credit incorrectly, and the court ultimately found that it wasn't. It has no bearing here. Instead, I think this case falls within the realm of this court's Gullett opinion and the Sixth Circuit's Roberts opinion. And I'd also like to just mention, although I think it's implicit, the appellant cites no case whatsoever for the proposition that consideration of good time credit is inappropriate. Neither party has cited a single case where a sentencing court was overturned because the sentencing court mentioned or considered good time credit, stand-alone factor or not. Let me ask my co-panelists if you have any questions. We have no questions. Thank you, Your Honor. You have some rebuttal time. Mr. McBeth, please. Thank you, Your Honor. Just briefly, a couple points. So I think it's important to think about what the purpose of the good time statute is. And the purpose of that statute is for the defendant to be able to earn 15% off whatever a 3553A sentence is. So the court calculates the 3553A sentence, and then from there the defendant can earn 15% down. But if the court can calculate the 3553A sentence and then go up 15%, the defendant, even if he earns all his good time, simply ends up back at 3553A and not— Good time is sometimes used by a district court to help a defendant, right, when you think about a year-and-a-day sentences. Would your argument eliminate a district court's ability to impose a year-and-a-day sentence to benefit a defendant? It might, Your Honor. It might. I haven't really thought about how, if at all, this might be different from that, but it's possible. But regardless, that issue is not presented here, so the court doesn't have to decide it. What is clear, I think, in this case is that, you know, as the government counsel says, the Roberts court said if good time credit is a stand-alone factor that impacts the sentence, then that's impermissible. And I think it's quite clear from the record that good time was a stand-alone factor. The court said, you know, it listed all the 3553A factors and said what achieves that is keeping you in prison until you're 60. And then it said, but because of good time, I'm going to make the sentence 40 years and not 32. If that's not a stand-alone factor, I don't know what is a stand-alone factor. And allowing the court, as I said, to, you know, inflate the sentence, as he did here, simply prevents the defendant from getting what he's supposed to be allowed to get, which is a sentence to earn, a sentence 15 percent below the 3553A sentence. And government counsel points out that there's no case directly on point, and I agree with that. But I think the Newby case from the Third Circuit and the Evans case from the Seventh Circuit are both, though not directly on point, both very instructive. And in Newby, the court said that a court cannot depart down because the defendant has lost good time credit. And the reason is that doing so would detract from the goals that the SRA was designed to achieve. Such a departure would give the defendants a lesser sentence than their respective crimes justly deserve. And if that's so, I think it necessarily follows that moving the sentence up, based on an expectation of good time, also results in a- In addition to everything else, you do admit we're here on plain error? Correct, Your Honor. But plain error does not require a case directly on point. It just has to be clear that a mistake was made here. I'm not suggesting that there was any error, but- No, I understand. Even if you did, where is the injustice here? The injustice is that the- well, so as to the third and fourth prongs, the Supreme Court has said in the Rosales-Morales case that a guidelines calculation that affects the sentence- Your Honor explains about an injustice being one that would reflect poorly on the judicial system. How does this reflect poorly on the judicial system? Well, Your Honor- When I read the sentence in transcript, I thought it reflected well. The court said in Rosales-Morales that if a sentence- if a guidelines error affects the sentence, that that will, in most cases, satisfy the third and fourth prongs. Now, obviously, this was not a guidelines miscalculation. It was, in our view, a statutory error. But there's no conceptual distinction, I think, between, you know, miscalculating the guidelines, misapplying the guidelines, and misapplying the statute. So if a guidelines error affects the third and fourth prongs, there's no reason that a statutory error shouldn't as well. And I see I'm out of time, so unless the court has any further questions, I'll leave it there. If there are no further questions, we thank you, and we will come down and brief counsel and move directly into our next case.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Allison J. Rushing